UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:11-CV-00150-R

**DON DURFLINGER**                                                                   **PLAINTIFF**

v.

**BOWLING GREEN CUSTARD, LLC, et al.**                               **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's motion to remand (DN 8). Defendants have responded (DN 11), Plaintiff has replied (DN 16), Defendants have submitted a sur-reply (DN 20), and Plaintiff has responded to the sur-reply (DN 24). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is GRANTED. This matter is hereby REMANDED to the Warren County Circuit Court.

**BACKGROUND**

This lawsuit has its origins in an agreement between Plaintiff Don Durflinger, Defendant Bret Freistedt, and Defendant Eric Ogden to open and operate a franchise of Culver's Restaurant in Bowling Green, Kentucky. The three established a limited liability corporation that would own the restaurant, Defendant Bowling Green Custard LLC ("BGC"). Under the articles of organization ("Articles"), Durflinger, Freistedt, and Ogden are the only "members" of BGC, with Durflinger as the lone "operating member." DN 1-3.

For reasons that are immaterial to this motion, the business arrangement between the three men soured and devolved into the present litigation. On August 24, 2011, Durflinger filed suit in the Warren County Circuit Court against BGC, Freistedt, and Ogden ("collectively Defendants"). According to the complaint, Durflinger received a letter from defense counsel "effectively trying

1

to remove him as Operating Member of [BGC]." Complaint, DN 1-1, ¶ 7. He alleges that this constituted an "improper removal," which breached the agreement between the parties. Complaint, DN 1-1, ¶¶ 8-10.

Defendants removed the action on September 30, 2011. Durflinger now seeks remand to the Warren County Circuit Court. He says remand is warranted under 28 U.S.C. § 1446(b) as Defendants failed to remove within thirty days of filing the lawsuit. Durflinger further argues the action lacks complete diversity amongst the parties. All concede diversity jurisdiction is present inasmuch as Durflinger is a resident of Kentucky, Freistedt and Ogden are residents of Illinois, and the controversy involves more than $75,000. Since BGC is an LLC, its citizenship is determined by the residency of its members. *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002). Durflinger contends his citizenship must be imputed to BGC because he is still a member and partial owner of the business. Freistedt and Ogden advance a different narrative where Durflinger has already been removed as a member of the company and complete diversity exists. Both of these bases for remand are confronted below.

## STANDARD

A federal district court has original diversity jurisdiction when a suit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Complete diversity must exist during the time of removal and when the case is commenced. *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). "Diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *SHR Ltd. Partnership v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989). "A defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir.

1993).

Additionally, section 1446(b) establishes that a defendant has 30 days to file for removal after the receipt of the initial pleading.  28 U.S.C. § 1446(b) (1994).  "For reasons of efficiency and comity, federal courts should construe this time limitation strictly against the extension of federal power in order to avoid encroachment on state court jurisdiction."  *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).

## DISCUSSION

### I. 30-day limitation under section 1446(b)

Durflinger declares that Defendants failed to file a notice of removal within 30 days of being served with the initial pleadings.   He says Defendants were served by certified mail at their principal place of business on August 28, 2011, and thus removal on September 30 was untimely. Despite his insistence, Durflinger has not produced any documents to verify service on this date, such as return receipts from the postal service or affidavits by his attorney.   For their part, Freistedt and Ogden insist they were not served on August 28 and were not aware of the lawsuit until September 6 when their attorney was provided a courtesy copy by Durflinger's attorney. Each has submitted an affidavit to that effect.  DN 11-1, DN 11-2.  Freistedt and Ogden say proper service was not effectuated until September 24, 2011.  Durflinger does not rebut these documents with affidavits or exhibits of his own, instead resting on the uncorroborated assertions in his briefing.

The defendant bears the burden of showing diversity jurisdiction is warranted.  *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).   Nevertheless, Durflinger has offered no proof to contradict the affidavits submitted by Freistedt and Ogden that they were first informed of the lawsuit on September 6.   In the

3

absence of evidence on the service of Defendants, the Court must accept the proof provided by Freistedt and Ogden. Removal was within the statutorily mandated period under § 1446 as Freistedt and Ogden did not receive notice of the suit until September 6 and were not served until September 28, 2011.

## II. Complete diversity

The parties' contentions about complete diversity boil down to one dispositive issue: is Durflinger still a member of BGC? The party asserting federal jurisdiction bears the burden of persuasion with factual disputes in motions to remand. *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1194 (2010). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 1194. Diversity jurisdiction cannot be established "argumentatively or by mere inference." *Getty Oil Corp., a Div. of Texaco, Inc. v. Insurance Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Illinois Cent. Gulf R. Co. v. Pargas, Inc.,* 706 F.2d 633, 636 (5th Cir. 1983)). Thus, Defendants must make an affirmative showing with "competent proof" that Durflinger has been expelled from BGC and no longer retains an interest in the organization. To reach this question, the Court will look to the Articles governing BGC, the complaint Durflinger filed in state court, and the exhibits the parties have attached to the instant briefing.

The "definitions" section of the Articles assigns Durflinger, Freistedt, and Ogden roles to play in BGC. All are considered "Original Members," while Durflinger is given the additional title of "Operating Member." DN 8-3 at 2. The Articles do not clarify whether Durflinger's classification as the operating member is mutually exclusive from his role as an original member, or alternatively, if the positions are separable. The Articles also provide for officers of BGC: a President, Vice President, Secretary, and Treasurer. DN 8-3 at 5. Subsection (*l*) of section 6.3 of

the Articles describes the process for removing officers and operating members:

> (*l*) Notwithstanding anything to the contrary, contained herein, any officer of the Company may be removed by Members for "Cause." For purposes of [the Articles], "Cause" shall be defined as . . .
>
> . . .
>
> The following "Causes" shall pertain only to the Operating Member:
>
> (v) failure of [BGC] to produce distributions averaging greater than 3% of the gross sales (as reported to Culvers Franchise System) of the Culver's operated by the Company for an period of twenty-four (24) consecutive months; or
>
> (vi) failure of the Culver's franchise operated by [BGC] to receive an average score of at least 86 in evaluations conducted by CFSI for any calendar year.
>
> Any removal of a Member for reason of Cause shall require a unanimous vote of the non-removing Members.

DN 8-3 at 6 (formatting altered). Subsection (m) under section 6.3 discusses the purchase of a member's interest:

> (m) <u>Purchase of a Member's Interest</u>: Upon written notice to a Member that he or she has been removed by Company pursuant to 6.3(*l*), the removed Member shall be obligated to sell, and the Company shall be obligated to purchase, all of the Member's Units in Company. . . .

DN 8-3 at 6-7 (formatting altered). The Articles continue that no member has the right to resign or withdraw from BGC without the consent of the other members. DN 8-3 at 7.

Durflinger contends the procedure for removing members from BGC is ambiguous and it is therefore unclear whether he was removed as merely the operating member or as an original member as well. The Court agrees that the Articles may present a number of unresolved questions, starting with section 6.3. For the most part, section 6.3 of the Articles addresses "officers" and not "members." Subsections (a) through (k) relate how officers are elected and define their responsibilities in BGC. Therefore, it stands to reason that subsection (*l*) would continue in this vein and describe the removal of "officers." The provision begins by describing

5

how "officers" are replaced and the types of "causes" that can trigger their dismissal.  It then changes from the "causes" that allow the replacement of officers to the "causes" for the replacement of the "operating member."

This shift from officers to operating members is perplexing for two reasons.  First, the Articles are unclear on whether the removal procedures under subsection (*l*) are limited to officers or if they also apply to members as well.  If subsection (*l*) covers the removal of members, it is out of place since this entire section of the Articles revolves around officers.  Second, subsection (*l*) muddies the waters about what it means to be an "operating member."  The parties seemingly agree that a member could be removed as an officer but retain a controlling interest in BGC.  The presence of "operating member" in the middle of subsection (*l*) could reasonably create the impression that the removal from this position bears the same result as the offices of President, Vice President, etc.  With the uncertainty as to the breadth of the removal power in subsection (*l*), the Court is not sure if the Articles permit Durflinger to have his operating membership revoked, yet remain an "original member."  *See* DN 8-3 at 2, 6.  Accordingly, even if Freistedt and Ogden attempted to remove Durflinger as the "operating member," such action under subsection (*l*) action may not equate to his complete expulsion from the organization.

The next potential problem is a matter of procedure - a unanimous vote.  Assuming the Court adopts the Defendants' interpretation of the Articles and section 6.3, subsection (*l*) commanded Freistedt and Ogden to hold a vote to remove Durflinger as a member.  The vote had to be unanimous and accompanied by one of the defined reasons for "cause."  DN 8-3 at 6.  The record does not contain evidence that this vote ever took place.  The complaint references a "notice of removal" letter sent by defense counsel to Durflinger on May 16, 2011, informing him that he had been removed as the operating member of BGC, but the letter itself does not describe a

vote held by Freistedt and Ogden.  DN 1-3.  Other correspondences between defense counsel and Durflinger do not allude to a vote to expel him.  DN 16-1 at 1-8.  Indeed, the evidence before the Court, including the attachments to the briefing, never mentions a vote to remove Durflinger.  DN 1-3, 8-4, 11-1, 11-2, 16-1.  Since this vote is the only mechanism under the Articles to remove Durflinger as a "member," the lack of evidence on the procedure weighs heavily against any argument that he was discharged from BGC.[1]  *Cf. Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) ("The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction.").

     Defendants urge removal because the language in Durflinger's complaint indicates he was expelled as member of BGC.  Though the complaint contains verbiage to support this argument, the Court concludes its wording is not dispositive on the present controversy.  The complaint repeatedly sets off the word "removed" with quotation marks, signifying that Durflinger believes the removal procedure invoked by Defendants was improper.  Even if this is an incorrect interpretation of the complaint's language, the pleading does not contain a passage where Durflinger unequivocally admits that he is no longer a member of the BGC.  Rather, Defendants have read the assorted passages of the complaint and have drawn this inference.  At best however, this is an unresolved interpretation of the pleading's language, and in the context of removal, "[a]ll doubts as to the propriety of removal are resolved in favor of remand."  *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted).  The highlighted portions of

---

[1] The correspondences between defense counsel and Durflinger refer to other agreements and documents that may have altered the Articles and how the removal of members operates.  *See* DN 1-3 at 7 (speaking of a "Goal Statement" on February 1, 2011); DN 8-4 at 2 (referencing changes to Articles in February 2011).  These amendments have not been submitted to the record and the Court is left to consider the Articles in their original, unaltered form.

the complaint are an insufficient jurisdictional hook for the Court.

Though motions for remand are often decided by reviewing the complaint and the documents submitted with it, courts may "look beyond the pleadings to assess challenged facts." *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 326 (6th Cir. 2007). Here, other documents introduced by the parties emphasize Durflinger continuing connection to BGC. Case in point, the parties exchanged a confidential settlement agreement and release ("Release") at some point after defense counsel sent Durflinger the "notice of removal." DN 8-4. Despite language in the Release that Durflinger was terminated on May 16, 2011, the potential agreement required him to "relinquish all of his right [sic], title and interest in and to his 62% Membership Interests in [BGC], including all rights of ownership, management and control of [BGC]." DN 8-4 at 3. In addition, the Release recognized that Durflinger had continuing financial obligations to BGC, including the repayment of loans. DN 8-4 at 4. Fairly read, the Release insinuates that even after Freistedt and Ogden attempted to oust Durflinger, he possessed a continuing ownership and financial stake in the BGC. Under these circumstances, remand to the state court is warranted. *Cf. Meredith v. Goin*, No. 3:10-CV-00536, 2010 WL 3394705, at *2-3 (W.D. Ky. Aug. 25, 2010) (considering the citizenship of a previously dismissed limited partner when he still possessed a "continuing investment interest" in a limited partnership); *Namco, Inc. v. Davidson*, 725 F. Supp. 1148, 1153 (D. Kan. 1989) (residences of *uninvolved*, *released* limited partners were to be disregarded for the purposes of diversity) abrogated on other grounds by *Carden v. Arkoma Assocs.,* 494 U.S. 185 (1990).

Finally, the Court is hesitant to exercise it jurisdiction, because doing so would necessarily require a ruling that Durflinger is no longer a member of BGC. While the allegations and exhibits associated with this motion include portions that may be reasonably read against remand,

Defendants have not shown that the ties between Durflinger and BGC are completely severed. The inconsistencies in the Articles cause the Court to question whether the agreement contains a mechanism to remove Durflinger as an "original member." Defendants have not presented evidence that Freistedt and Ogden voted to remove Durflinger as was required by the Articles. Though action was taken to break ties with Durflinger prior to filing the lawsuit, the Release demonstrates that both parties believe his connection to and interest in BGC are not entirely cut. The Defendants have failed to persuade the Court that Durflinger's citizenship should not be imputed to BGC. This may well be an issue decided in trial or in a pretrial motion after discovery, but presently, the Court simply cannot state *as a matter of law* that Durflinger is not a member of BGC. When a litigant cannot establish the diversity of the parties, the court is not permitted to "presume the existence of federal jurisdiction." *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 919 (5th Cir. 2001). For all of these reasons, remand to state court is warranted.

## CONCLUSION

Plaintiff's motion to remand (DN 8) is GRANTED. This matter is remanded to the Warren County Circuit Court. The clerk of court is directed to strike this matter from the active docket. An appropriate order shall issue.